UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARLOWE V.N. WASHINGTON and ELMIRA
WASHINGTON,

                        Plaintiffs,

                        DECISION & ORDER

-vs-

                        11-CV-6087-CJS

THE AFRICAN METHODIST EPISCOPAL
CHURCH, INC. and RICHARD FRANKLIN
NORRIS,

                        Defendants.
_____

**APPEARANCES**

For Plaintiffs:                    T. Andrew Brown, Esq.
                                    Joseph A. Gawlowicz, Esq.
                                    925 Crossroads Building
                                    Two State Street
                                    Rochester, NY 14614
                                    (585) 454-5050

For Defendants:                Ann E. Evanko, Esq.
                                    1300 Liberty Building
                                    Buffalo, NY 14202-3670
                                    (716) 849-8969

**INTRODUCTION**

**Siragusa, J.** This diversity employment contract case is before the Court on Defendants' motion (Doc. No. 3) to dismiss for lack of subject matter jurisdiction, or, in the alternative, for failure to state a cause of action. As to subject matter jurisdiction, Defendants claim that the Free Exercise Clause of the First Amendment precludes the Court from adjudicating Plaintiff's claims in this lawsuit. For the reasons stated below, Defendants' application is granted and the lawsuit is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## FACTUAL BACKGROUND

Plaintiff Marlowe V.N. Washington ("Washington") was a pastor employed by The African Methodist Episcopal ("AME") Church, assigned to an AME Church in Rochester, New York. Plaintiff Elmira Washington is his wife. In the complaint, filed in this Court on February 22, 2011, Plaintiffs allege four causes of action against the AME Church and Defendant Richard Franklin Norris ("Norris"), a Bishop of the AME Church, and Washington's direct supervisor. The causes of action are as follows: (1) breach of contract; (2) intentional infliction of emotional distress; (3) *prima facie* tort; and (4) loss of consortium. Plaintiffs demand a jury trial and pray for compensatory damages of $2 million, special damages of $123,734.00, as well as punitive damages and attorney fees.

Washington was appointed by Norris in January 2005 as pastor of the Baber AME Church in Rochester, New York. Subsequently, after his first term as pastor expired on May 22, 2005, Washington alleges that he was provided a new one year appointment paper by Norris and AME Church for each of the periods 2005-2006; 2006-2007; 2007-2008, 2008-2009, and 2009-2010. In his complaint, Washington claims that, during 2009-2010, Norris,

> became openly hostile and malicious without reason toward Rev. Washington and Mrs. Washington. Bishop Norris engaged in a campaign to destroy and harm them, culminating in Rev. Washington being forced out of the church, in breach of their contract and the common law. This was done for reasons that had nothing to do with the Reverend's performance of his duties, since he was by any reasonable measure successful, but was driven solely by malice and a resulting intent to harm him, his family and his career which treatment would have been intolerable to any reasonable person.

(Compl. ¶ 22.) Washington further claims in his complaint that during a visit to Baber AME Church,

> Bishop Norris told the local church leadership that he was upset that Rev. Washington never told him about Baber Church's debt and was "hiding" it from the bishop. This was false since Bishop Norris had specifically sent Rev. Washington to deal with the Baber Church's financial problems and thus knew about those problems well before Rev. Washington was ever involved in Baber Church.

(Compl. ¶ 27.) The complaint also alleges that on the morning of June 19, 2010, while attending in Philadelphia

> 33. ..., Rev. Washington was called to a conference room where Bishop Norris was seated at a table with his cabinet of 17 elders arrayed around him. Bishop Norris informed Rev. Washington that "We all have agreed that you are not going back to Baber today." Bishop Norris explained that "You're gone from Baber because you had your officers threaten to remove your church from the conference." This accusation was false.

(Compl. ¶ 33.) On Sunday, June 20, 2010, the day after Rev. Washington was told of his new assignment, Rev. James C. Simmons arrived at Baber AME Church with an appointment as its pastor.

> In 2008, Washington's wife had been treated for brain cancer in Rochester and needed on-going care. Thus, when Washington was told he would be moved, he was also concerned for his wife's health. As they traveled back to Rochester from Philadelphia, Washington learned he was being sent to the Carter Community AME Church in Jamacia, Queens, New York. Baber AME Church had, at the time, a congregation of 500 people and an income of about $515,000 annually, whereas Carter Community AME had a congregation of less than 75 and revenue of about $150,000 annually. This, Washington claims, would have caused his weekly salary to drop from $1,200 to $800 and he no longer would have had health insurance or benefits for himself, or his family. Since Mrs. Washington's anti-seizure medication cost more than $500 per month, she had to take a low-paying job to be able to obtain health care coverage.

**STANDARD OF LAW**

Federal Rule of Civil Procedure 12(b)(1) provides, in pertinent part, as follows: "a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction…." It is well settled that,

> [a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (citations omitted).

**ANALYSIS**

In the context of this case, Washington is clearly a minister working in that capacity for the AME Church. The case law, both in the New York courts and the Federal courts, recognizes a ministerial exception to the application of anti-discrimination laws with respect to a religious institution's employment of a minister. As the Southern District of New York recognized in *Kraft v. Rector, Churchwardens & Vestry of Grace Church*, No. 93-2157, 2004 U.S. Dist. LEXIS 4234 (S.D.N.Y. Mar. 15, 2004):

> Numerous Courts of Appeal have considered whether the Free Exercise Clause precludes ministers from suing church employers for purported violations of federal anti-discrimination statutes. Those courts have held, unanimously, that the Free Exercise Clause bars the application of these statutes to churches' employment decisions concerning ministers. Courts have referred to this bar as being a "ministerial exception" to, or a "ministerial exemption" from, federal anti-discrimination statutes.

*Kraft*, 2004 U.S. Dist. LEXIS 4234, 12-13 (footnotes, collecting cases, omitted). Also in *Kraft*, the district court recognized Ninth Circuit precedent holding that, "[j]ust as there is a ministerial exception to Title VII, there must also be a ministerial exception to any state

law cause of action that would otherwise impinge on the church's prerogative to choose its ministers or to exercise its religious beliefs in the context of employing its ministers." *Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 950 (9th Cir. 1999). The Second Circuit adopted the ministerial exception in *Rweyemamu v. Cote*, 520 F.3d 198, 207 (2d Cir. 2008). In that case, the Second Circuit observed that, "[t]he more 'pervasively religious' the relationship between an employee and his employer, the more salient the free exercise concern becomes." *Id*. at 208.

Plaintiffs urge the Court to assert jurisdiction over their New York common law claims since the New York State courts, "have long exercised subject matter jurisdiction over claims like those alleged here. The authority to do so stems from the New York Religious Corporations Law which empowers the courts to hold religious entities…accountable to follow their internal procedures in relation to the contracts and terms of employment of clergy…." (Pl.s' Mem. of Law at 3.) Plaintiffs site as authority for this proposition the decision in *Walker Memorial Baptist Church v. Saunders*, 285 N.Y. 462 (1941). In *Walker*, the minister was discharged by the corporate entity and not by the religious society, as required by the Baptist Church's rules. The New York Court of Appeals adjudicated the matter, holding that the, "distinction between the church as a religious society and the church as a religious corporation has long been recognized and clearly formulated by the previous decisions of this court.… It follows, therefore, that the plaintiff corporation had no power to discharge the defendant, the Rev. Mr. Saunders, from his position as minister of the Walker Memorial Baptist Church." *Id*. at 472.

The dispute here, however, is not with regard to whether Norris, as a bishop of the AME Church, had the authority to discharge Washington. Instead, Washington cites to The Doctrine and Discipline of the AME Church (Gawlowicz Aff. ¶ 15; Compl. ¶ 8) alleging

that Norris failed to give him the required 90-day notice of his intent to transfer Washington to another AME Church, and that the new appointment was not, "equal to Rev. Washington's abilities, training and experience, as required by the Doctrine, nor was it comparable to or better than the appointment at Baber Church…." (Compl. ¶ 52.) In their supporting memorandum of law, Defendants quote from the Book of Discipline[1] as follows:

> 1. The bishop shall preside in all of the Annual Conferences with the Episcopal district where assigned, and in conjunction with the presiding elders, determine what shall be the appointment of all of the pastors at the Annual Conference….
>
> 11. The bishop shall permit a pastor to remain on a circuit or station as long as his or her services are pleasing and profitable to the people.
>
> 12. The bishop shall not have anything in this section applied which will prevent the bishop from using godly judgment in making changes in the appointments, that are deemed necessary for the good of the church.
>
> "Authority of Active Bishops", Part VI, Section III, The Book of Discipline of the AME Church, p. 136-137.

(Def.s' Mem. of Law at 7–8.) In their complaint, Plaintiffs also quote from AME Doctrine (though do not cite the source). They state:

> 2. It shall be the basic right of itinerant ministers of the African Methodist Episcopal Church to:
>
> a. A pastoral appointment equal to their abilities, training, and experience, when available. The new appointment, when available, shall be comparable or better than the previous one, provided the pastor has not been found guilty under Judicial Administration....

---

[1] The difference in titles appears insignificant. Defendants cite to The Book of Discipline of the African Methodist Episcopal Church, and Plaintiffs refer to The Doctrine and Discipline of the African Methodist Episcopal Church. Neither party takes issue with the use of the different titles for what appears to be a common source of church doctrine. *See* Washington Aff. ¶¶ 6 & 8.

e. Notice of Pastoral Change - At least ninety (90) days in advance of the bishop's intent to move him or her to another charge without his or her consent, notice of such change must be given to the pastor. Such intent by a bishop must be in writing and indicate reasons for the same. His or her appointment shall be valid for one (1) year from date of appointment and may only be abrogated for judicial cause, or mutual agreement between the bishop and pastor, for the good of the congregation when certified in writing to the presiding bishop with copies to the presiding elder and the pastor, by the stewards of said congregation and concurred in by the presiding elder and the bishop.

(Compl. ¶ 31.)

The quotation contained in 12, above, gives the bishop the authority to use his "godly judgment" to transfer a pastor from one church to another. It became apparent at oral argument that both sides were relying on the Book of Discipline to determine whether the transfer was proper. To adjudicate this question, the Court would necessarily have to interpret the AME Church's spiritual guidance, thus entangling itself in Defendant's Free Exercise rights under the First Amendment.

## CONCLUSION

The Free Exercise clause of the First Amendment precludes subject matter jurisdiction in this Court. Therefore, Defendants' motion (Doc. No. 3) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted. The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated: September 16, 2011
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge